# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. MARK WILSON-BEY, Defendant. | No. 11-CR-2043 CJW-MAR<br><br>**MEMORANDUM OPINION AND ORDER** |

This matter is before the Court on defendant Mark Wilson-Bey's amended motion for compassionate release based on the ongoing COVID-19 pandemic. (Doc. 191). On September 1, 2020, the government timely filed a resistance to defendant's motion. (Doc. 193). On September 8, 2020, defendant timely filed a reply. (Doc. 194). For the following reasons, defendant's motion is **denied**.

## I. BACKGROUND

On October 9, 2012, the Court sentenced defendant to 135 months' imprisonment with eight years of supervised release to follow on one count of conspiracy to distribute 100 grams or more of heroin after having been previously convicted of a felony drug offense, to be served consecutively to the undischarged term imposed in a prior drug case. (Doc. 104, at 1–3). On February 27, 2015, the Court reduced defendant's term of imprisonment to 120 months. (Doc. 153). On July 22, 2020, defendant filed a pro se motion for compassionate release. (Doc. 189). On August 6, 2020, the Court appointed counsel for defendant. (Doc. 190). On August 20, 2020, defendant filed the instant motion. (Doc. 191). Defendant is currently incarcerated at Federal Correctional Institute ("FCI") Elkton, in Lisbon, Ohio, with a projected release date of December 5, 2023.

BOP, *Find an Inmate*, https://www.bop.gov/inmateloc/. In his motion, defendant asks that the Court grant him compassionate release based on health concerns related to the ongoing COVID-19 pandemic. (Doc. 192, at 2).

## II. COMPASSIONATE RELEASE

A court's ability to modify a sentence after it has been imposed is limited. Title 18, United States Code, Section 3582(c)(1)(A) allows a court to modify a sentence through "compassionate release." A defendant may directly petition the court for compassionate release "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A). The court may only reduce the defendant's sentence, however, after considering the factors set forth in Title 18, United States Code, Section 3553(a) to the extent they are applicable, and finding that:

(i) extraordinary and compelling reasons warrant such a reduction; or

(ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission[.]

18 U.S.C. § 3582(c)(1)(A). Defendants bear the burden of establishing eligibility for a sentence reduction. *United States v. Jones*, 836 F.3d 896, 899 (8th Cir. 2016).

The starting point in determining what constitutes "extraordinary and compelling reasons" under Section 3582(c)(1)(A)(i) is the United States Sentencing Guidelines

2

("USSG") section on compassionate release. See USSG §1B1.13; *see also United States v. Rivernider*, No. 3:10-cr-222(RNC), 2019 WL 3816671, at *1–2 (D. Conn. Aug. 14, 2019). The policy statement contained in USSG Section 1B1.13 states that extraordinary and compelling reasons exist under several circumstances, including when the defendant is: (1) suffering from a terminal illness; (2) suffering from a serious physical or medical condition, a functional or cognitive impairment, or physical or mental deterioration due to aging which substantially diminishes the defendant's ability to care for themselves within the facility and from which the defendant is not expected to recover; (3) at least 65 years old, is experiencing serious deterioration because of age, and has served at least 10 years or 75 percent of their sentence; (4) experiencing a change in family circumstances, namely the death or incapacitation of the caregiver of the defendant's minor child or the incapacitation of the defendant's spouse who now requires the defendant's care; or (5) some other extraordinary and compelling reason as determined by the Director of the Bureau of Prisons ("BOP").

Courts are split on whether the policy statement is binding because it predates the First Step Act of 2018's changes to Section 3582(c)(1)(A). *Compare United States v. Lynn*, No. 89-0072-WS, 2019 WL 3805349, at *4 (S.D. Ala. Aug. 13, 2019), *with United States v. Urkevich*, 8:03CR37, 2019 WL 6037391, at *3 (D. Neb. Nov. 14, 2019). This Court has found that USSG Section 1B1.13, although a helpful guidepost, does not restrain a court's assessment of whether extraordinary and compelling reasons exist to release a defendant. *See United States v. Burnside*, No. 6:18-CR-2068-CJW-MAR, 2020 WL 3443944, at *3–4 (N.D. Iowa June 18, 2020) (compiling cases).

Thus, to qualify for compassionate release a defendant must (1) fully exhaust his administrative remedies, (2) demonstrate to the court that "extraordinary and compelling reasons warrant such a reduction", and (3) show that the Section 3553(a) factors otherwise warrant a reduction in sentence to the extent they are applicable.

### A. *Exhaustion of Administrative Remedies*

Title 18, United States Code, Section 3582(c)(1)(A) states that a court may consider reducing a term of imprisonment after the defendant exhausts all administrative remedies within the BOP or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" This Court has found that defendants are not required to administratively appeal a warden's denial and may instead fulfill Section 3582(c)(1)(A)'s exhaustion requirement by waiting 30 days from the date the warden receives their request before filing a motion in the courts. *See Burnside*, 2020 WL 3443944, at *4–7.

On June 4, 2020, defendant formally petitioned the warden of FCI Elkton for compassionate release. (Doc. 189, at 21). That same day, the warden responded and informed defendant that his petition had been "forwarded for processing." (*Id.*). The record reflects no further action taken by prison officials. As it has been more than 30 days since defendant made his request, the Court finds that defendant has fulfilled the exhaustion requirement of Section 3582(c)(1)(A).

### B. *Extraordinary and Compelling Reason*

Defendant argues that he has an extraordinary and compelling reason for release because his medical conditions put him at a high risk of severe complications and death if exposed to COVID-19. (Doc. 192, at 6–15). In support of his argument, defendant cites his medical history of heart problems, obesity, hypertension, and chronic kidney disease ("CKD"). (*Id.*, at 15). Defendant also asserts that his age places him at greater risk due to COVID-19. (*Id.*). The government argues defendant's health conditions are not substantial, are well-controlled, and do not warrant release. (Doc. 193, at 8–14).

The presence of COVID-19 at a defendant's specific facility or within the BOP generally can constitute an extraordinary and compelling reason for compassionate release if the defendant is particularly susceptible to COVID-19 due to their age or

4

underlying health conditions. *See Burnside*, 2020 WL 3443944, at *7 (compiling cases); *see also People at Increased Risk*, CDC (Sept. 24, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/index.html.

At 53 years old, defendant's age alone does not put him at significant risk from COVID-19 infection. *See Older Adults*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus / 2019-ncov/need-extra-precautions/older-adults.html. Eight out of ten deaths related to COVID-19 in the United States have been in adults older than 65. *Id.* Persons over age 85 are at "[t]he greatest risk for severe illness from COVID-19." *Id.* Thus, although defendant's age is relevant, he is not near or in a higher-risk age group.

More concerning are defendant's medical conditions—namely, ventricle dilation and hypertrophy, hypertension, obesity, and CKD—which are underlying medical conditions recognized by the CDC as actually or potentially increasing a person's risk of complications from COVID-19. *See People with Certain Medical Conditions*, CDC (Sept. 11, 2020), https://www.cdc. gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medicalconditions.html.

Defendant suffers from mild dilation of the left ventricle and eccentric left ventricular hypertrophy. (Doc. 192-1, at 81). These conditions are not listed among those considered to increase a person's risk from COVID-19, although cardiomyopathy is. *See Serious Heart Conditions and Other Cardiovascular and Cerebral Diseases*, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal=https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#serious-heart-conditions. Cardiomyopathy is a broad category of heart conditions which generally cause the heart muscle to become enlarged or stiff. *Other Conditions Related to Heart Disease*, https://www.cdc.gov/heartdisease/other_ conditions.htm. Defendant

5

obliquely mentions cardiomyopathy when discussing his other heart ailments but does not assert that he has been formally diagnosed with cardiomyopathy. (Doc. 192, at 8). This Court is not in a position to make a medical determination regarding the similarities or differences between defendant's diagnosed conditions and cardiomyopathy. Based on the record before the Court, defendant's diagnoses of mild dilation of the left ventricle and eccentric left ventricular hypertrophy do not amount to "serious heart conditions" as described by the CDC. Admittedly, the CDC has "limited data and information about the impact of underlying medical conditions and whether they increase the risk for severe illness from COVID-19." *See People with Certain Medical Conditions*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Defendant's heart conditions therefore cannot be entirely discounted, especially when considered in the context of his other medical conditions.

Defendant also suffers from hypertension and takes numerous medications to control it. (Doc. 192-2, at 6, 16). The CDC categorizes hypertension among those conditions which might increase a person's risk of complications from COVID-19. *See People with Certain Medical Conditions*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. The government argues that defendant's hypertension is not severe enough to warrant release because it is well-controlled within the prison environment. (Doc. 193, at 13–14). Taken by itself, the government is correct that defendant's hypertension is insufficient to warrant release. The nature of COVID-19 requires that defendant's hypertension be considered in the context of defendant's other medical conditions, however. "The more underlying conditions someone has, the greater their risk of severe illness from COVID-19." *People with Certain Medical Conditions*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html. Accordingly, the Court finds that

6

defendant's hypertension is a potential risk factor relevant to the pandemic and affords this condition some weight in its analysis.

Defendant's body mass index ("BMI") also places him at heightened risk. Having a BMI of 30 or higher "increases [one's] risk of severe illness from COVID-19." *People with Certain Medical Conditions: Obesity*, CDC (Sept. 11, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html#obesity. The record reflects that as of November 20, 2019, defendant was 73 inches tall and weighed 268 pounds. (Doc. 192-1, at 32). This places his BMI at approximately 35.4. *See* (Doc. 192, at 9). Obesity is a significant risk factor for serious complications from COVID-19 infection. A person with a BMI above 30 is three times more likely to be hospitalized than a person with a BMI under 30. *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, https://www.cdc.gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-underlying-medical-conditions.html. Thus, the Court finds that defendant's obesity is an underlying medical condition that puts him at increased risk of COVID-19 infection.

Defendant's diagnosis of CKD is also an underlying medical condition which places him at heightened risk of complications from COVID-19. *People with Certain Medical Conditions: Chronic Kidney Disease,* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html?CDC_AA_refVal= https%3A%2F%2Fwww.cdc.gov%2Fcoronavirus%2F2019-ncov%2Fneed-extra-precautions%2Fgroups-at-higher-risk.html#chronic-kidney-disease. "Having chronic kidney disease of any stage increases [the] risk of severe illness from COVID-19." *Id*. Thus, defendant's diagnosis of Stage III CKD is a severe medical disorder which places him at heightened risk of COVID-19 infection.

7

When defendant's age is considered with all his relevant medical conditions, defendant is vulnerable to dangerous complications from COVID-19 infection. *Risk for Severe Illness Increases with Age*, https://www.cdc.gov/coronavirus/2019-ncov/images/need-extra-precautions/high-risk-age.jpg. Defendant has at least two underlying medical conditions—obesity, and CKD—which together make him four and a half times more likely to be hospitalized should he contract COVID-19. *COVID-19 Associated Hospitalization Related to Underlying Medical Conditions*, https://www.cdc. gov/coronavirus/2019-ncov/covid-data/investigations-discovery/hospitalization-underlying-medical-conditions.html. When considered in conjunction with the relatively higher risk associated with his age group and his hypertension and heart condition, defendant is indeed at significant risk from COVID-19 infection.

The fact that some of his conditions are well managed diminishes the danger posed by his medical conditions. Defendant does not contest the government's assertion that his medical conditions are adequately addressed at FCI Elkton. Rather, defendant argues that the existence of his medical conditions—coupled with the potential for reinfection—warrants defendant's release. (Doc. 192, at 14). Defendant tested positive for COVID-19 in August of 2020. (Doc. 192-2, at 45). Despite his medical conditions, however, medical records indicate that he was asymptomatic, and defendant later reported only mild symptoms. (Doc. 192, at 12).

Defendant is correct to point out that there is currently no evidence to suggest that a prior COVID-19 infection in any way inoculates a person against subsequent infection. (*Id.*, at 11). At the same time, there is currently no evidence before the Court to indicate that a subsequent infection would be any more serious than the first infection. Several courts—including this Court—have denied compassionate release in cases when the defendant was asymptomatic or displayed only minor symptoms. *See, e.g.*, *United States v. Sampson*, No. 08-CR-2025-CJW-MAR, 2020 WL 4207555, at *4. (N.D. Iowa July

8

22, 2020) (finding that there is "no reason to believe [defendant] would suffer significantly more severe complications if he were to become infected again" when defendant had multiple medical conditions but had only a minor prior COVID-19 infection). The Court reached this conclusion in *Sampson* despite the fact that the defendant in that case was "incarcerated at a facility with a high exposure rate." *Id.* Such is not the case here. FCI Elkton currently has only four confirmed cases in the facility—two inmates and two staff. *Covid-19; Coronavirus, BOP,* https://www.bop.gov /coronavirus/#:~:text=COVID%2D19%20Cases&text=There%20are%201%2C886% 20federal%20inmates,attributed%20to%20COVID%2D19%20disease. Although FCI Elkton has had high infection rates in the past, current infection rates are quite low. Thus, although this is a close case, given defendant's proven ability to weather a COVID-19 infection without adverse consequences and the effective medical treatment he is receiving from the BOP, the Court finds that defendant has not established that extraordinary and compelling reasons exist warranting release.

### C. *Section 3553(a) Factors*

Having found no extraordinary and compelling reasons warranting a reduction, the Court's inquiry could end there. The Court believes that a thorough analysis is warranted in this case, however, and now turns to the question of whether defendant's release would be consistent with the sentencing factors established by Congress in Title 18, United States Code, Section 3553(a).

Guideline Section 1B1.13(2) provides compassionate release is appropriate only when "[t]he defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)[.]" Section 3582(c)(1)(A) also requires a court to consider the factors set forth in Title 18, United States Code, Section 3553(a) before granting compassionate release. Section 3553(a) requires the Court to consider: (1) "the nature and circumstances of the offense and the history and characteristics of the

defendant;" (2) the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and provide rehabilitative opportunities and care to the defendant; (3) the kinds of sentences available; (4) the sentencing range set by the USSG; (5) any pertinent policy by the United States Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities among similarly situated defendants; and (7) the need for restitution to any victims. 18 U.S.C. § 3553(a)(1)–(7).

Defendant has an extensive criminal history. Notably, defendant has numerous convictions for drug possession and distribution. At age 24, defendant was sentenced to seven years imprisonment for possession with intent to deliver 99 grams of a substance containing cocaine. (Doc. 87, at 13). Six months following the discharge of that sentence, defendant was convicted of possession of marijuana with intent to deliver. (*Id.*, at 14). At the time of his arrest for that offense, police located multiple firearms in defendant's residence. (*Id.*). At age 34, defendant was charged with his first federal offense, possession of 6.47 grams of cocaine base with intent to distribute after having previously been convicted of a felony drug offense. (*Id.*). This offense involved not only cocaine base, but also over 200 grams of marijuana. (*Id.*). After serving more than seven years in prison for that offense and while still on supervised release, defendant committed the instant offense. (*Id.*, at 15).

Defendant's underlying offense here is serious. Less than a month after his release from his first federal prison sentence defendant began transporting cocaine base and heroin from Chicago, Illinois to Waterloo, Iowa. (Doc. 87, at 4). Over the course of approximately eighteen months, defendant trafficked over 100 grams of heroin into this district and engaged in both user- and distributer-level sales. (*Id.*, at 5). In November of 2011, heroin sold by defendant caused the death of another person. (*Id.*). After his arrest, defendant pled guilty to one count of conspiracy to distribute 100 grams or more

of heroin after having been previously convicted of a felony drug offense. (Doc. 104, at 1–3).

The Honorable Linda R. Reade, United States District Judge, initially sentenced defendant to 135 months' imprisonment. (Doc. 104). Defendant's advisory Guidelines range of imprisonment was 57 to 71 months. (Doc. 87, at 27). This offense carried a mandatory minimum sentence of 120 months, however. (*Id.*). To reflect the fact that defendant's conduct resulted in a person's death, Judge Reade relied on USSG §5K2.2 to depart upward to a range of 108 to 135 months and ultimately sentenced him at the top of that range. (Doc. 153, at 4 n.2). Changes made to the sentencing guidelines after defendant's conviction resulted in a new range of 87 to 108 months. (*Id.*). At 120 months, the statutory minimum sentence for this offense was higher than the amended guidelines recommendation and therefore became the guideline range for defendant's amended sentence. (*Id.*).

Defendant encourages this Court to consider the amount of time defendant has served as compared to the guideline range before application of the statutory minimum. (Doc. 192, at 16). If this amended guideline were to be applied, defendant would have served approximately 80% of his sentence by now. The guideline in this case, however, is 120 months. Regardless of where defendant may fall on the sentencing table, Congress removed from consideration the factors that would normally apply to sentencing by establishing a mandatory minimum term of imprisonment for this offense. In so doing, Congress expressed its estimation of the severity of defendant's offense and what it considered to be a just sentence. It is not for the Court to upset that determination.

Defendant has currently served less than 70% of his sentence. This would not ordinarily satisfy this Court that justice has been done, but that is particularly so here. Defendant committed the instant offense while on supervised release for a similar prior offense. Additionally, defendant's conduct while incarcerated concerns the Court.

Defendant has had multiple disciplinary infractions while serving his sentence. (Doc. 192-2, at 1–2). While none of these infractions are particularly serious, they are numerous and quite recent. (*Id.*). Defendant's history of drug-related recidivism and disciplinary infractions while incarcerated raise serious doubts about defendant's willingness to do what is expected of him and integrate safely back into society.

Defendant's medical conditions are undoubtedly serious, but so too is his criminal conduct. Releasing defendant at this early juncture would simply not reflect the seriousness of this conduct or ensure the safety of the community. One person is already dead from defendant's conduct. This Court is not willing to risk more lives by taking a chance on this recidivist offender. In light of the applicable factors established by Section 3553(a), the Court finds that compassionate release is inappropriate here and therefore **denies** defendant's motion.

## IV. CONCLUSION

For these reasons, defendant's Amended Motion for Compassionate Release (Doc. 191) is **denied**.[1] Defendant must serve the remainder of his term as previously directed. (Doc. 153).

**IT IS SO ORDERED** this 5th day of October, 2020.

_____
C.J. Williams
United States District Judge
Northern District of Iowa

---

[1] To the extent defendant's pro se motion for compassionate release (Doc. 189) is not superseded by his current motion, (Doc. 191), the Court **denies** it as duplicative.